IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Donald Barker, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 7:08-cv-00454-JMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Retirement Plan of International Paper Company, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for review of Defendant Retirement Plan of International Paper Company's (the "Retirement Plan") decision to deny disability retirement ("DR") benefits to Plaintiff Donald Barker ("Barker") under its employee pension benefit plan which is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). The Retirement Plan denied plaintiff's claim for DR benefits, and that benefit denial was upheld during the plan appeal process. Barker now seeks DR benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA.

The parties have filed a joint stipulation and memoranda in support of judgment pursuant to the court's Specialized Case Management Order for ERISA benefits cases. The parties agree that the court may dispose of this matter consistent with the joint stipulation and memoranda. After thorough review, the court affirms the Retirement Plan's denial of DR benefits.

1

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Donald Barker worked at International Paper Company's ("International Paper") Spartanburg Container facility for approximately ten (10) years and ceased working in May of 2006. While employed with International Paper, Barker was enrolled in the benefit plan. Shortly after Barker's last day at work, Barker visited his physician complaining of pain and allegedly indicated to his physician that the pain was the cause of his cessation of work. He was treated during the summer of 2006 for pain in his joints and extremities. In September 2006, Barker underwent surgery related to his ongoing pain. Shortly thereafter, Sedgwick Claim Management Services, Inc. ("Sedgwick"), a third-party vendor retained by the Retirement Plan to assist in the administration and review of claims pursuant to the benefit plan, forwarded to Barker a disability retirement benefits application.

According to Barker, he waited to see how he recovered before he filed for disability retirement. Approximately eight months later, in May of 2007, Barker submitted his initial claim forms to Sedgwick for claims processing. Along with the initial paperwork, Barker submitted an attending physician's statement of disability completed by one of his treating physicians, Dr. Philip LaTourette. Dr. LaTourette diagnosed that Barker suffered from: "cervicalgia, cervical radiculopathy, and cervical facet arthropathy." Dr. LaTourette also asserted that Barker suffered from carpal tunnel syndrome and sub-acute plus chronic C5-C6 radiculopathy. Barker also submitted a physician's functional assessment form from Dr. LaTourette which stated that, from a physical standpoint, Barker could stand only 1 to 3 hours a day, sit 3 to 5 hours a day, lift a maximum of 10 to 20 lbs., frequently lift 10 lbs., and occasionally lift up to 25 lbs. Further, according to the physician's assessment, Barker could not reach above shoulder level and could not

bend, stoop, or climb. Dr. LaTourette concluded that Plaintiff had a Class IV physical impairment which translated into "moderate limitation of functional capacity, capable of clerical/administrative (sedentary) activity" and that such condition was permanent. Dr. LaTourette also concluded that Barker was suffering from a Class III psychiatric impairment which translated into "moderate limitations" in his mental/nervous condition. Dr. LaTourette opined, however, that Mr. Barker was qualified by reason of education, training, or experience to perform the limited duties for which he was psychologically capable.

In addition to Dr. LaTourette's own diagnoses, he referred to a functional capacity evaluation ("FCE") which Barker completed. The FCE was performed by therapist Jim Storch on February 27, 2007. Mr. Storch concluded:

> "Client does have mobility and strength deficits consistent with his cervical spine history, but may benefit with a course of physical therapy and/or hard therapy to address functional activities. Client would also benefit with a vocational rehab consult. Maximal and consistent test observed."

He also noted that Barker demonstrated "smooth and coordinated movement patterns" throughout the testing, and that he "demonstrated safe and appropriate changes in body mechanics, including use of accessory muscles, counterbalancing, and momentums, as load/force increased." The FCE physical exam revealed that Barker's range of motion and muscle strength were within functional limits.

Barker's mental condition was also evaluated by Dr. Donald Hinnant, PhD. Dr. Hinnant, a psychologist, described Barker's diagnosis as "MOD" and reported that he had prescribed Cymbalta to Barker, which had helped Barker's condition. Dr. Hinnant did not recommend psychiatric care and reported that Barker did not have "any work-related limitation in function due to a mental

3

condition." Dr. Hinnant also reported that Barker had no problems with orientation, that his thought process was intact, that his thought content was appropriate, that his mood and affect were normal, that his attention and concentration were good, and that his memory was good.

After reviewing Barker's initial submissions, Sedgwick requested additional information. In response to the request, Dr. LaTourette provided a statement that Barker was "permanently disabled" and that he planned "monthly visits, medication management, [and a] possible spinal cord stimulator trial." Barker also submitted updated records from Dr. LaTourette which showed that he was regularly receiving care and that his condition and problems were consistent with Dr. LaTourette's description.

On August 2, 2007, Zenia Andrews completed a transferable skills analysis ("TSA") of Barker. The purpose of the TSA was to identify occupations, if any, that Barker could perform within any identified medical restrictions or limitations. In her assessment, Ms. Andrews reviewed Barker's FCE, chart notes and medical records. She concluded that Barker could "perform routine and repetitive or short-cycle tasks; perform a variety of duties; attain precise set limits, tolerances, and standards; and make judgments and decisions." Ms. Andrews listed the following as alternative occupations for Barker: palletizer operator; dump operator; belt repairer; assembler, production; and routing clerk. She also noted that the occupations were considered "entry-level occupations that do not require more than a high school education and the job duties are learned on the job in a relatively short period."

After reviewing the information submitted by Barker, the FCE, and the TSA, the Retirement Plan notified Barker that his claim for disability retirement benefits had been denied by letter dated August 9, 2007. The Retirement Plan informed Barker that, based on the FCE, he was physically

capable of working and, therefore, was not disabled as defined under the benefit plan. The Retirement Plan also informed Barker that, based on Dr. Hinnant's assessment and the documentation provided by Dr. LaTourette, he did not suffer from a mental condition that would affect his potential for employment. The Retirement Plan further informed Barker that he did not qualify for disability retirement benefits because the TSA indicated that he retained the ability to perform other types of work within his functional capacity and noted that the results of the FCE closely matched the requirements listed on the detailed job description that International Paper provided to the Retirement Plan.

On November 13, 2007, Barker appealed the denial of his claim for DR benefits. He requested that the Retirement Plan suspend its review until he was able to submit all of his medical records. On December 21, 2007, Barker submitted additional medical records for consideration in his appeal, including records from a follow-up office visit at the Carolinas Center for Advanced Management of Pain. He submitted additional records from Dr. Hinnant and records from Dr. Mark Miles. On January 2, 2008, Barker forwarded an affidavit to the Plan for consideration in his appeal in which he stated that he was "completely and totally disabled from performing any job, even one that is purely sedentary, on a full-time and consistent basis." He also submitted an affidavit from Dr. LaTourette attesting to Barker's total disability "from performing any job on a full-time basis."

Upon reciept of Barker's additional medical information, the Retirement Plan referred Barker's claim to Insurance Appeals, Ltd. for independent medical review which was conducted by three physicians: Robert N. Polsky, M.D., a board-certified psychiatrist; Howard Grattan, M.D., a physician board-certified in physical medicine and rehabilitation; and J. Parker Mickle, M.D., a board-certified neurosurgeon. The records submitted to the reviewers included notes regarding

5

Barker's claim; September 1993 to June 1996 medical records from Dr. Bannon; May 1999 to June 2007 medical records from Dr. Miles; March 2006 to December 2007 medical records from the Carolinas Center for Advanced Management of Pain (Dr. LaTourette and Dr. Hinnant); medical records from Dr. Nobles and Dr. Lal; laboratory results; and x-rays.

On January 23, 2008, Dr. Polsky opined in his independent medical review that Barker was not disabled due to a psychiatric disorder. Dr. Polsky concluded that Barker had "not demonstrated by the available clinical documentation to be disabled from the ability to perform any employment for which he may be qualified by either education, training, or experience as of 5/17/2006." He noted that "[t]he clinical findings in the medical records for the timeframe in question indicate the claimant to be essentially psychiatrically stable."

Dr. Grattan opined in his independent medical review that Barker was not physically disabled from any occupation per the FCE, the most recent physical examination findings, and electrodiagnostic and imaging techniques. He stated that Barker "should be able to functionally accomplish at least a light duty occupation." Dr. Grattan also concluded that Barker's medical findings failed to support an "inability to perform job duties as stated in the light duty classification in the transferable skills analysis."

In his independent medical review, Dr. Mickle concluded that Barker was not disabled from performing any employment for which he may be qualified by education, training or experience as of May 17, 2006. Dr. Mickle also concluded that "there w[ere] no corroborating neurological findings that would suggest impairment of such a degree that [Barker] could not function at a light to medium DOT [Department of Transportation] classified level." Dr. Mickle additionally noted that Barker's neurological exam was normal.

6

On January 30, 2008, the Disability Retirement Committee met to consider Barker's claim. The Committee, which is charged with making the final decision regarding claims for disability retirement benefits, reviewed Barker's claims file and determined that Barker failed to satisfy the benefit paln's definition of disability. By letter dated February 1, 2008, the Retirement Plan notified Barker that the appeal of his claim for DR benefits had been denied because he failed to meet the definition of "totally and permanently disabled" under the benefit plan.  In that correspondence, the Retirement Plan informed Barker that it considered: (1) Dr. Polsky's conclusion that  Barker had "not demonstrated by the available clinical documentation [that he was] disabled from the ability to perform any employment for which he may be qualified by either education, training, or experience as of 5/17/2006"; and (2) Dr. Grattan's conclusion that  Barker was not disabled from any occupation per the FCE and the most recent physical examination findings and electrodiagnostic and imaging techniques. The Plan also informed Mr. Barker that Dr. Lal, Mr. Barker's own physician, felt he could function at a light to medium occupational demand level.

>The relevant terms of the benefit plan are as follows:
>
>"Disability" or "Disabled" means a total disability which is a medically determinable physical or mental impairment or diagnosed terminal illness which renders the Participant incapable of performing any occupation or employment for which the participant is qualified by education, training or experience and which is likely to be permanent during the remainder of the Participant's life, provided the Plan Administrator finds, and a physician or physicians designated by the Plan Administrator certify, that the Participant is Disabled.

>Additionally, the benefit plan provides that:
>
>The plan administrator has the authority, responsibility and discretion to determine all questions of eligibility and status and has the right to interpret the provisions of the Plan.

7

Barker filed the instant action on February 10, 2008. The parties filed their joint stipulation and memoranda in support of judgment on December 5, 2008.

### STANDARD OF REVIEW

The parties originally disagreed as to the correct standard of review to be applied in this court's evaluation of the Retirement Plan's decision to deny DR benefits to Barker. Both parties agree that the plan reserves discretionary authority to the plan. However, Barker contended that the deference the court should apply should be lessened based on Barker's contention that the Retirement Plan operates under a conflict of interest because it is funded by a trust controlled by International Paper. After the parties submitted their memoranda in support of judgment, the United States Supreme Court and the United States Court of Appeals for the Fourth Circuit held that courts no longer needed to conduct a modified abuse of discretion standard of review where conflicts of interests exists. *See Metro. Life Ins. Co. v. Glenn*, ---U.S. ----, ----, 128 S. Ct. 2343, 2351, 171 L.Ed.2d 299 (2008); *Carden v. Aetna Life Ins. Co.*, 559 F.3d 256, 260 (4th Cir. 2009). Instead, courts are now to consider "conflicts [as only] one factor among many that a reviewing judge must take into account" in determining whether an administrator abused its discretion. *Glenn*, 128 S. Ct. at 2351. Therefore, the court will apply the abuse of discretion standard in this case.

The Fourth Circuit Court of Appeals has identified eight nonexclusive factors that guide an ERISA abuse-of-discretion review:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard

relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Carden*, 559 F.3d at 261 (internal citations omitted).

In reviewing a plan administrator's decision for an abuse of discretion, the court may only consider the record as it existed before the administrator at the time of the decision.[1] *See Elliott v. Sara Lee Corp.*, 190 F.3d 601, 608-09 (4th Cir. 1999). Where the administrator's decision is reasonable, the court should not disturb the benefits decision in substitution of its own judgment. *See Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Insurance Co.*, 32 F.3d 120, 125 (4th Cir. 1994). "Under the abuse of discretion standard, the plan administrator's decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla" and is "[s]pecifically, . . .such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidation Coal Co. v. Williams*, 453 F.3d 609, 614-15 (4th Cir. 2006) (citations omitted).

## DISCUSSION

Barker asserts that the Retirement Plan abused its discretion in failing to consider the cumulative effect of all of his contributing conditions of disability. Specifically, Barker claims that the only physician that considered both his physical and mental incapacities was his own treating

---

[1] Barker requested that the court consider the Social Security Administration's award of benefits in determining whether the Retirement Plan abused its discretion. However, the court may only consider the record as it existed before the administrator at the time of the decision. Because the award was not presented to the administrator for consideration, this court will not consider the award in its analysis.

physician, Dr. LaTourette. However, the record demonstrates that the Retirement Plan considered the totality of Barker's conditions and reasonably decided Barker's claim.

First, the Retirement Plan had the benefit of Dr. LaTourette's analysis before it when making it's decision. Although Dr. LaTourette determined that Barker was totally disabled, the Retirement Plan also had before it the FCE and the TSA which indicated that Barker had the ability to perform some occupations, at least on a light duty basis. The Retirement Plan further evaluated the independent reviews of three physicians who all concluded that Barker was not totally disabled. Although Barker claims that the independent reviewers did not consider the totality of his mental and physical conditions, at least two of the reviewers' reports indicate that they considered both his physical and mental conditions in analyzing Barker's level of disability. *See* Dr. Polsky Report on Donald Barker at 2 (Barker 440) (psychiatric review discussing physical symptoms); Dr.Grattan Report on Donald Barker at 2 (Barker 445) (physical review discussing mental symptoms).

"ERISA does not impose a treating physician rule, under which a plan must credit the conclusions of those who examined or treated a patient over the conclusions of those who did not*."* *White v. Sun Life Assurance Co. Of Canada*, 488 F.3d 240, 254 (4th Cir. 2007). However, to deny benefits under ERISA, an administrator must present grounds that "a reasoning mind would accept as sufficient" to supports its decision. *Id.* (internal citations omitted). The court finds that the Retirement Plan has provided a reasonable and sufficient basis for its decision. The Retirement Plan obtained and relied on objective information to deny Barker's claim.

The court must also consider whether the Retirement Plan operated under a conflict of interest in assessing Barker's claim. Although International Paper funds the trust which pays the benefits under the Plan, International Paper has no access to the assets of the trust for its own

purposes. It also uses a third party in the administration of benefit claims. Therefore, the court finds that the Retirement Plan did not operate under a conflict of interest in determining whether to allow Barker to obtain benefits under the Plan.

Conclusion

Therefore, after considering the record as a whole, the court concludes that the Retirement Plan did not abuse its discretion in denying Barker disability retirement benefits. The court, therefore, affirms the Defendant Retirement Plan of International Paper Company's decision to deny Barker disability retirement benefits and **GRANTS** judgment in favor of Defendant Retirement Plan of International Paper Company.

**IT IS SO ORDERED.**

                                                                                             s/ J. Michelle Childs  
                                                                                             United States District Judge

March 29, 2011  
Greenville, South Carolina